### WALKER v. McCRAY.

No. 18493.    Opinion Filed July 10, 1928.

(Syllabus.)

**1. Insurance—Action Against Insured for Premium—Agent Paying Premium Subrogated to Rights of Company and Entitled to Sue.**

Where the contract of an insurance agent with his company obligates the agent to pay the company all that part of the first premium on delivered policies in excess of the commission allowed the agent under the contract, and the agent pays such premium to the insurance company, he is subrogated to all the rights of his principal in the premium and may maintain a suit in his own name therefor.

**2. Trial—Effect of Demurrer to Evidence.**

It is well settled in this jurisdiction that a demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove and all inferences and conclusions which may be reasonably drawn therefrom, and upon demurrer to the evidence the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove.

Error from District Court, Tulsa County; Edwin R. McNeill, Judge.

Action by William H. Walker against William S. McCray. Judgment for defendant, and plaintiff appeals. Reversed and remanded, with directions.

M. A. Breckinridge and Chas. R. Bostick, for plaintiff in error.

A. F. Moss and H. R. Young, for defendant in error.

HEFNER, J.   William H. Walker, plaintiff in error, as plaintiff, brought this suit in Tulsa county against William S. McCray, defendant in error, as defendant, and alleged that on the 14th day of March, 1924, the defendant made a written application for a policy of life insurance in the sum of $100,000, and attached a copy of the application to his petition.   He further alleged that, in accordance with the application, the defendant presented himself for examination; was duly examined and passed by the doctors; that said examination was in due time forwarded to the home office of the Royal Union Mutual Life Insurance Company of Des Moines, Iowa, and accepted by the company; that the policy of insurance was thereupon issued and delivered to the defendant; and upon the delivery of the same, the defendant became liable for the first year's premium on the same in the sum of $5,060.

Plaintiff further alleged that under his contract with the life insurance company he was liable to the company for said premium; and paid said premium, and thereupon, by reason thereof, became subrogated to all the rights of the insurance company as against the defendant.

The application for the insurance which was signed by the defendant provides that the policy shall be in force after the application is approved and accepted by the company at its home office, and further provides that if the first premium shall not have been paid to the company or its agent at the time of the making of the application, the policy shall not be in force until it is delivered, and the premium actually paid while in good health.

The defendant filed a general denial, and specifically alleged that the policy was never delivered to the defendant, denied that it was ever in force, and further alleged that plaintiff was under no obligation to pay the premium to the insurance company, and if it was paid, the plaintiff paid it as a volunteer, and therefore would not be subrogated to the rights of the company.

After the plaintiff had introduced all of his evidence, the court sustained a demurrer thereto and discharged the jury and dismissed plaintiff's petition.

The trial court held that the plaintiff was not subrogated to the rights of the insurance company, and, therefore, not entitled to maintain this action in his own name. This action of the court is assigned as error.

The proof shows that the plaintiff paid the insurance company the first year's premium on the defendant's policy.  If the plaintiff's contract with the insurance company obligated him to pay the first year's premium, then he would be, on the payment of the same, subrogated to the rights of the insurance company, and could maintain this action in his own name.

In the case of Lamb v. Connor, 146 Pac. 174, the Supreme Court of Washington, in the second paragraph of the syllabus, said:

"Where an insurance company held its soliciting agent liable for the payment of premiums on policies, the agent, paying a premium, could sue insured in his own name for the amount therefor."

This was an action by the insurance agent against the insured, and the objection was made that the plaintiff was not the proper party, and the court, after holding that this objection was not well founded, held that the agent was the proper party, and in the body of the opinion said:

"It is quite generally held—in fact, it seems to be held in all late cases—that an agent who, in discharge of his obligations to his principal, pays the debt of the other contracting party to his principal, may be subrogated to the right of the principal to maintain an action.

"'When an insurance company looks to its general agent for the premiums on insurance written by him, the agent is the owner of the debt, arising by his extending credit for the premiums, so that, on payment thereof, he is subrogated to all the rights of his principal in the premiums, entitling him to sue therefor.'"

If the plaintiff, under his contract with the insurance company, was obligated to pay the first year's premium, on the payment of the same, he became subrogated to the rights of the insurance company and could properly maintain this suit in his own name.

This brings us to a construction of the plaintiff's contract with the insurance company, and the material provision with reference to the payment of premiums is as follows:

"Remittances.   Sales manager shall with-

out delay, and in any event within 60 days, and at his sole expense, pay over in cash to the company all that part of the first premium on delivered policies in excess of the hereinbefore stated commissions thereon. Sales manager shall be held responsible for all moneys received for and on behalf of the company, either by him or his salesmen or sales agents or others appointed and employed by him. All such moneys are and shall be treated as trust funds and shall be used for no other purpose than as in this contract stated."

The defendant contends that this contract binds the agent only in cases where he or his subagent has actually received the cash on the premium, and does not bind the agent to pay the premium unless the cash was actually received. If it were not for the first provision of the contract, this contention would be well founded, but the first sentence is broader and in our judgment binds the agent to pay in cash to the company all that part of the first premium on delivered policies in excess of the commissions allowed the agent. If the plaintiff, under this contract, should deliver a policy without receiving the cash therefor, and the insured did not pay the premium, we think the insurance company could sue plaintiff and recover a judgment against him for its part of the premium. This being true, if the policy in the instant case was delivered to and accepted by the defendant, then the agent, under his contract with his principal, became responsible for the payment of the premium, and when the premium was paid, the plaintiff was subrogated to the rights of the insurance company, and it follows that he could properly maintain this suit in his own name.

One of the material issues in this case was whether or not the policy was delivered to and accepted by the defendant. Was plaintiff's evidence sufficient to require the submission of this issue to the jury? The substance of plaintiff's testimony was as follows:

"So, in the meantime, I took the policy over and left it with his man in the office whom I believe they call Jaggs. I told him that that was a policy for Mr. McCray and asked him if he would see that he got it and he said, 'I certainly will.' So he said when I went back—I made a number of trips to Mr. McCray's office, and he was very busy, in and out, and nervous, and I tried to be very patient with him. He finally told me he had lost the policy, and told me to come back at a certain time, which I did, and he wasn't in. I didn't try to make any collection on the policy until after the time

his age changed, which was after the 25th of May. So I finally, after making various trips to his office, got hold of him and told him that it was now necessary that I have the premium on this policy, as I had to make arrangements to take care of the company. So he postponed me from time to time, and finally I told him—I wrote the company, and explained the situation and asked them if, after I had made various efforts to make collection, asked them if I could cancel the policy and pay the term rate. So they prepared a document and sent to me direct, to have Mr. McCray execute and pay the amount of the term insurance that was designated in that, and they would cancel the policy. I presented it to Mr. McCray and he said he wouldn't sign anything. So I told him, 'Bill, you ought to be ashamed of yourself. Are you going to make me sue you to pay this premium?' 'Well,' he said, 'I haven't been insured' or 'The policy isn't in force' or something that kind, and I says, 'The policy is in force for the year because it has been issued and delivered to you; if you have lost it, that doesn't indicate the policy isn't in force, because if you make affidavit you have lost the policy I would have a duplicate issued, of course.' That is a brief resume of my transactions with Mr. McCray."

From this evidence it is apparent that the policy was issued by the company and delivered in the office of the defendant. The record shows the defendant saw the policy. He stated to the plaintiff that he had lost it. Plaintiff tried to collect the premium, and when he did not collect it he undertook to cancel the policy and a document was prepared and presented to the defendant to execute in order that the policy might be canceled, and the defendant refused to execute it.

The pleadings put in issue the question as to whether or not the policy was delivered to and accepted by the defendant. Whether or not it was delivered and accepted by him must be proved by all the facts and circumstances surrounding the transaction.

A demurrer to the evidence admits all of the facts which the evidence in the slightest degree tends to prove and all of the inferences and conclusions which may be reasonably and logically drawn therefrom. In the case of Calhoma Oil Syndicate et al. v. Atlas Supply Co., 117 Okla. 6, 244 Pac. 770, this court, in the first paragraph of the syllabus, said:

"A demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove, and all the inferences and conclusions which may be reasonably

and logically drawn from the evidence, and upon demurrer to the evidence the plaintiff is entitled to every inference which the evidence, considered in the light most favorable to him, reasonably tends to prove."

Under the rule announced in the above case and under the facts in this case, the court should have overruled the demurrer to the evidence of the plaintiff.

The defendant urges that where the application for insurance and the policy of insurance provides that the first premium must be paid before the policy becomes effective, neither party is bound until the payment of the first premium, and the insured has the right to refuse to pay the first premium and thereby reject the policy, and if this is done no liability is incurred by the insured. If, however, upon a submission of the case to the jury it should find that the policy was delivered to and accepted by the defendant, he, of course, would be obligated to pay the premium.

The defendant also urges that the minds of the insurer and the insured never met upon the material terms of the policy. It is, of course, true that before either party is bound or liable they must agree upon the essential terms of the policy. If, however, the jury should find that the policy was delivered to and accepted by the defendant, he would be bound thereby.

The judgment of the trial court is reversed, and remanded, with directions to grant a new trial.

MASON, V. C. J., and LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 33 C. J. 68, §765. (2) 38 Cyc. p. 1543; 26 R. C. L. p. 1063; 3 R. C. L. Supp. p. 1490; 4 R. C. L. Supp. p. 1694; 5 R. C. L. Supp. p. 1437; 6 R. C. L. Supp. p. 1581.